UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SAMUEL R. QUEEN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 96-1387 (JAR) |
| | ) | |
| ALBERTO GONZALES,* et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Jane A. Restani, <u>Judge</u>.**

    Samuel R. Queen ("Plaintiff") brings this suit against the Federal Bureau of Investigation ("FBI"), under the Freedom of Information Act and the Privacy Act (collectively the "FOIPA"), 5 U.S.C. §§ 552, 552a (2000), to obtain documents relating to the FBI's investigation into Plaintiff's involvement in a heroin distribution organization. The court granted Plaintiff's motion for a supplemental <u>Vaughn</u> Index, and the FBI responded by filing the Declaration of David M. Hardy, Section Chief of the FBI's Record/Information Dissemination Section ("Hardy Declaration"). <u>See</u> Hardy Decl. (June 1, 2005). The FBI also reprocessed Plaintiff's FOIPA request and attached the responsive pages to the Hardy Declaration. At present, the parties renew

---

    *Although the complaint names Janet Reno as a defendant in this action, pursuant to Fed R. Civ. P. 25(d)(1), Alberto Gonzales substitutes as the proper defendant. When a public officer is a party to an action in his official capacity and during its pendency ceases to hold office, the officer's successor is automatically substituted as a party. <u>Id.</u>

    **This case was initially filed with this court on June 18, 1996, but was reassigned on November 18, 2004, to the Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

their cross-motions for summary judgment.¹ After careful review of the Hardy Declaration and the attached FBI response, the court grants summary judgment in favor of the government.

## BACKGROUND

By letter dated June 13, 1995, Plaintiff submitted a FOIPA request to the FBI for records related to the FBI's criminal investigation of Plaintiff. Following a search of the automated indices to the Central Record System at the FBI headquarters ("FBIHQ") and the Baltimore Field Office, the FBI advised Plaintiff that it located approximately 20,000 responsive pages, and requested advance payment of processing fees of $1,990.00. By letter dated April 10, 1996, Plaintiff responded by narrowing his FOIPA request to "paperwork that pertains to money, property, real property, seizures, forfeitures, and all other materials within the definition of 'property.'" Hardy Decl. Ex. A. On June 18, 1996, Plaintiff filed suit against the FBI under the FOIPA.²

Based on Plaintiff's narrowed request, the FBI reviewed its initial search file, and identified subfiles pertaining to Plaintiff's civil forfeiture of property resulting from the FBI's criminal investigation. By letter dated May 6, 1998, the FBI notified Plaintiff that it discovered 389 pages responsive to his request and 338 pages were being released. Hardy Decl. Ex. D. The FBI made redactions to protect certain information pursuant to Freedom of Information Act

---

[1] Plaintiff's request for default was not filed with the court and his request for waiver of service is not in this action. We do not address them.

[2] Initially, Plaintiff filed suit against the FBI, the Department of Justice Criminal Division ("DOJ"), the Drug Enforcement Administration ("DEA"), and the Executive Office for the United States Attorney ("EOUSA"). On November 10, 1997, the court entered judgment in favor of the DEA. On March 17, 1998, the court granted summary judgment in favor of the DOJ and EOUSA.

sections 552(b)(2) ("Exemption 2"), (b)(3) ("Exemption 3"), (b)(7)(C) ("Exemption 7(C)"), (b)(7)(D) ("Exemption 7(D)"), and (b)(7)(E) ("Exemption 7(D)"), and Privacy Act section 552a(j)(2) ("Exemption j(2)"). Id. On July 19, 1999, the FBI informed Plaintiff that it was discontinuing its reliance on Exemption (7)(E), and releasing ninety reprocessed pages in full, and five reprocessed pages in part. Hardy Decl. Ex. E.

The parties filed cross-motions for summary judgment. The FBI attached to its motion the Second Declaration of Scott A. Hodes ("Hodes Declaration"), Hodes Decl. (July 19, 1999), and Plaintiff filed a motion requesting a supplemental Vaughn Index. By court order dated April 4, 2005, the court held that the Hodes Declaration did not satisfy the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). Memorandum Opinion 5 (April 4, 2005). The court directed the FBI to file a supplemental Vaughn index responsive to Plaintiff's May 6, 1998 narrowed FOIPA request. Memorandum Opinion 5 n.2.

On June 1, 2005, the FBI filed the Hardy Declaration, which provides an explanation of the FBI's process for searching, reviewing and processing the records responsive to Plaintiff's narrowed FOIPA request and provides justifications for the FBI's withholdings. Pursuant to its preparation of the Hardy Declaration, the FBI reprocessed Plaintiff's narrowed FOIPA request and released additional withholdings. In summary, the FBI identified 424 pages of records responsive to Plaintiff's narrowed FOIPA request, of which 194 pages were released with redactions, 196 pages were released in full, and 34 pages were withheld as duplicates.[3] No pages were withheld in full pursuant to FOIPA exemptions.

---

[3]The Hodes Declaration asserts that the FBI identified 414 responsive pages, Hodes Decl. 7, however, the Hardy Declaration corrects that assertion. Hardy Decl. 8 n.1

On the parties' renewed cross-motions for summary judgment, there is no dispute that the FBI has not provided Plaintiff with all 20,000 pages responsive to his initial FOIPA request. Plaintiff claims he is entitled to summary judgment directing the FBI to produce all 20,000 pages. Moreover, Plaintiff asserts that the FBI failed to adequately respond to his narrowed request because the FBI search did not uncover documents related to all of the property subject to Plaintiff's request and failed to justify its withholdings pursuant to the FOIPA. The FBI argues that summary judgment is appropriate because the undisputed evidence shows that its response to Plaintiff's narrowed request fully complied with the FOIPA's requirements.

## DISCUSSION

Summary judgment for the government is appropriate where the evidence, when viewed in the light most favorable to the plaintiff, raises no genuine issue of material fact with regard to the agency's compliance with the FOIPA. Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). With respect to the adequacy of the search, the government must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). With respect to the government's document production, the government must satisfy the court that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIPA's] inspection requirements." Nat'l Cable Television Ass'n, Inc. v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).

I. **Adequacy of the Supplemental Vaughn Index**

When an agency withholds information pursuant to FOIPA exemptions, it must produce a

"Vaughn index," providing a description of the records, or portions of records, withheld by the agency. See Vaughn, 484 F.2d at 827; Edmonds Inst. v. U.S. Dep't of Interior, 383 F. Supp. 2d 105, 107–108 (D.D.C. 2005). The index must include "a description of each document being withheld, and an explanation of the reason for the agency's nondisclosure." Oglesby v. United States Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996). Agency affidavits can satisfy Vaughn's requirements if they provide "the kind of detailed, scrupulous description that enables a District Court judge to perform a searching de novo review." Church of Scientology of Cal., Inc. v. Turner, 662 F.2d 784, 786 (D.C. Cir. 1980); see also Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987) (stating that "[i]t is the function, not the form, of the index that is important").

By order dated April 5, 2005, this court held that the Hodes Declaration, submitted as the FBI's Vaughn Index, failed to meet the requirements of Vaughn, and directed the FBI to prepare a supplemental Vaughn Index. In response to that order, the FBI provided the Hardy Declaration, reprocessed Plaintiff's FOIPA request, and attached, as Exhibit F, copies of all of the pages the FBI found responsive to Plaintiff's FOIPA request. See Hardy Decl. Exhibit F. Each page of Exhibit F is consecutively numbered as "Queen 1" through "Queen 424." For each page withheld in its entirety, the FBI provided a deleted pages sheet ("DPS").[4] For each page withheld in part, the FBI labeled each redaction with an exemption code. In order to review the justification for each redaction, the reviewing party refers back to the Hardy Declaration, which describes the type of information withheld and provides the basis for redacting that type of

---

[4]The FBI did not withhold any pages in their entirety pursuant to FOIPA exemptions. The only pages withheld in their entirety were duplicates. The DPS sheets for the duplicate pages provide the page numbers for the correlated processed pages. See Hardy Decl. 27.

information.[5] In addition to providing justifications for each exemption code, the Hardy Declaration lists all of the page numbers on which that exemption code is invoked.

The court finds that the Hardy Declaration provides a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977). Accordingly, the court finds that the Hardy Declaration satisfies the requirements of Vaughn.

## II.    Adequacy of the Search

As an initial matter, Plaintiff argues that the FBI's search was inadequate because it failed to respond to Plaintiff's FOIPA request, dated September 30, 1995. The court addressed this issue in its order dated April 4, 2005, finding that the FBI was only required to respond to Plaintiff's narrowed FOIPA request, dated April 10, 1996. In response to Plaintiff's initial request, the FBI conducted a search, which uncovered 20,000 pages of records. Rather than pay the processing fee to review those documents, Plaintiff narrowed his FOIPA request. Later, Plaintiff filed suit to demand that the FBI produce records in response to his FOIPA request. After receiving documents responsive to his narrowed FOIPA request, Plaintiff clarified that he expected his suit to be treated as a renewal of his initial FOIPA request. The court determined that Plaintiff's FOIPA suit did not renew his initial FOIPA request because, in part, he never

---

[5] The Hardy Declaration provides for example:
> if "(b)97(C)-1" appears adjacent to a deletion of information on a document, the (b)(7)(C) designation refers to FOIA Exemption (b)(7)(C) concerning "Unwarranted Invasion of Privacy." The numerical designation (-1) following the "(b)(7)(C)" narrows the main category to the more specific subcategory "Names of Special Agents and Support Personnel."

Hardy Decl. 12.

provided payment of the required processing fees for that request.  Accordingly, the court reviews the adequacy of the FBI's search in response to Plaintiff's narrowed FOIPA request.

In the instant case, the Hardy Declaration avers that the FBI searched the Central Record System at the FBIHQ and the Baltimore Field Office and uncovered 20,000 pages of records responsive to Plaintiff's initial FOIPA request.  Following Plaintiff's narrowed request to "paperwork that pertains to money, property, real property, seizures, forfeitures, and all other material within the definition of property," the FBI identified subfiles G1, G3, G4, G6 of FBIHQ file 166E-BA-75817 as being responsive to Plaintiff's narrowed request.[6]  These subfiles were identified as relating to civil forfeiture matters of Plaintiff's property resulting from the FBI's criminal narcotics investigation.

The court is satisfied from the description of the FBI's filing system and the searches for records concerning Plaintiff's property that the FBI conducted a search likely to locate all records responsive to Plaintiff's narrowed FOIPA request.  With no evidence to the contrary, the court grants the FBI's motion for summary judgment with respect to its search for records.  See Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (holding that "in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope

---

[6]The Hardy Declaration describes FBIHQ file 116E-BA-71587 as pertaining to "an investigation of the criminal activities of plaintiff and other individuals in a criminal conspiracy to distribute illegal narcotics."  Hardy Decl. 9.

The Hardy Declaration describes the contents of the responsive subfiles as follows: (1) Subfile G1, consisting of pages 1 through 97 of Hardy Declaration Exhibit F, pertains to the civil forfeiture of $4,500 in currency that was seized during the Plaintiff's September 3, 1993 arrest; (2) Subfile G3, consisting of pages 98 through 214, pertains to the civil forfeiture of a Nissan truck; (3) Subfile G4, consisting of pages 215 through 307, pertains to the civil forfeiture of a Porsche automobile; (4) and Subfile G6, consisting of pages 308 through 418, pertains to the civil forfeiture of a Honda motorcycle.  Pages 419 through 424 consist of three letters from the FBIHQ to the Department of Justice concerning the narcotics investigation.  Id. at 9–11.

and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA").

### III. Application of Exemptions

The FBI redacted portions of documents under Freedom of Information Act Exemptions 2, 3, 7(C) and 7(D), and Privacy Act Exemption j(2).  Plaintiff asserts generally that the FBI failed to properly justify withholding records under these exemptions.  Without any specific challenge to the FBI's redactions, the court is satisfied from the Hardy Declaration that the FBI's reliance on these exemptions is appropriate.

#### A. Privacy Act Exemption j(2)

Exemption j(2) allows an agency "to exempt any system of records within the agency . . . if the system of records is . . . maintained by an agency . . . which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . ."  5 U.S.C. § 552a(j)(2).  The subfiles at issue here are found in the FBI's Central Records System and relate to the FBI's criminal narcotics investigation of the Plaintiff.  Accordingly, the FBI's application of Exemption (j)(2) to these subfiles is appropriate.  See Whittle v. Moschella, 756 F. Supp. 589, 595–96 (D.D.C. 1991).

#### B. FOIA Exemption 2

Exemption 2 permits the FBI to withhold from disclosure records that are "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 2 should be applied only where the redacted information is used for "predominantly internal purposes" and that "public disclosure would risk circumvention of agency regulations."  Crooker v. Bureau of Alcohol Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981).

Here, the Hardy Declaration avers that the FBI asserted Exemption 2 to protect the internal facsimile numbers of FBI Special Agents and support personnel at FBIHQ and the Baltimore Field Office who were involved in Plaintiff's narcotics investigation. Application of Exemption 2 is appropriate in this case because disclosure of the "predominately internal" database of facsimile numbers would "significantly risk circumvention of agency regulations or statutes." See Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec., 384 F. Supp. 2d 100, 109 (D.D.C. 2005) (holding that Exemption 2 justifies withholding of disclosure of information that would allow access to internal agency telephone numbers and access codes).

### C.     FOIA Exemption 3

Exemption 3 authorizes withholding of materials "[s]pecifically exempted from disclosure by statute," providing the statute "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld." 5 U.S.C. § 552(b)(3). Here, the FBI asserts that certain wiretap information is exempt from disclosure pursuant to Title III of the Omnibus Crime Control Safe Streets Act of 1968, 18 U.S.C. §§ 2510 – 2520 ("Title III"). Title III exempts information concerning wiretaps by federal law enforcement agencies, which includes the identities of targeted individuals, targeted telephone numbers, the identities of participants in recorded conversations, and the content of the conversations. See Butler v. U.S. Dept. of Justice, 1994 WL 55621 (D.D.C. 1994) (holding exempt affidavits submitted in support of a wiretap issued pursuant to Title III). In the instant case, the FBI's application of Exemption 3 is appropriate because the wiretap withholdings include information consisting of the identities of individuals and telephone numbers targeted in

the FBI's criminal investigation of Plaintiff, the dates, times, and participants in the wiretaps, and both the summarized content and the actual content of the transcript of a particular intercepted communication.

        D.       FOIA Exemption 7(C)

Exemption 7(C) permits withholding information compiled for law enforcement purposes when its release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) protects the names and addresses of private individuals appearing in files unless disclosure "is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity . . . ." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991). This protection covers the "strong interest" of suspects, witnesses, investigators, and law enforcement agents who work on criminal investigations, "in not being associated unwarrantedly with alleged criminal activity." See Computer Prof'ls for Soc. Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996); Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 487–88 (D.C. Cir. 1980).

Here, the FBI asserts Exemption 7(C) to protect (1) names of FBI Special Agents responsible for the narcotics investigation, (2) the names of a local law enforcement officer with the Baltimore Police Department and two local law enforcement offices with the Maryland State Police who assisted the FBI's narcotics investigation, (3) names and/or identifying data of individuals who provided the FBI provided the FBI with information related to the narcotics investigation, (4) names and/or identifying data of individuals who were of investigative interest to the FBI during the course of the narcotics investigation, and (5) names and/or identifying data of individuals who were merely mentioned in the narcotics investigation records. With no

evidence to the contrary, the court finds the FBI's application of Exemption 7(C) to be appropriate.

      **E.**      **FOIA Exemption 7(D)**

Exemption 7(D) permits the withholding of records complied for law enforcement purposes if their disclosure "could reasonably be expected to disclose the identity of a confidential source . . . ." 5 U.S.C. § 552(b)(7)(D). Exemption 7(D) can be applied to protect the names and identifying data of individuals who provided information to the FBI under an implied assurance of confidentiality. See U.S. Dep't of Justice v. Landano, 508 U.S. 165, 179–81 (1993).

In the instant case, the FBI seeks to protect sources that provided information about Plaintiff's criminal narcotics activities. To determine whether there is an implied assurance of confidentiality, the court looks to the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. Landano, 508 U.S. at 181. Absent any contrary evidence, the court finds that the circumstances surrounding the sources' imparting of information created an implied assurance of confidentiality. See Mays v. Drug Enforcement Admin., 234 F.3d 1324, 1331 (D.C. Cir. 2000) (stating that "a source of information about a conspiracy to distribute cocaine typically faces a sufficient threat of retaliation that the information he provides should be treated as implicitly confidential").

**CONCLUSION**

For the reasons set forth above, the court grants the government's motion for summary judgment and denies the Plaintiff's motion for summary judgment.


Date: November 15, 2005                                    /s/ Jane A. Restani
                                                           Jane A. Restani
                                                           Judge